IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| BARBARA EDDINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO. CV-09-RRA-0139-W |
| | ) |
| DR. MELINDA ROBINSON, | ) |
| individually and in her role as the | ) |
| Principal of Carrollton Elementary | ) |
| School, DR. LEONARD DUFF, | ) |
| individually and in his role as | ) |
| Superintendent of the Pickens | ) |
| County Board of Education, and | ) |
| THE PICKENS COUNTY | ) |
| BOARD OF EDUCATION, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This is a civil action filed by the Plaintiff, Barbara Eddins, against the Defendants, Dr. Melinda Robinson, individually and in her role as the Principal of Carrollton Elementary School; Dr. Leonard Duff, individually and in his role as Superintendent of the Pickens County Board of Education; and the Pickens County Alabama Board of Education.

The complaint alleges that the defendants engaged in employment discrimination, on the basis of her sex, female, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.* (Count One).  More specifically, the complaint alleges that the defendants created a hostile work environment for the plaintiff.  The complaint also alleges discrimination against the plaintiff in violation of the Americans With Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101, *et seq.* (Count Two); and retaliation against the

1

plaintiff for complaining of discrimination, in violation of Title VII  (Count Three).

The case comes before the court on the motion for summary judgment filed by the defendants.  (Doc. 15.)

## STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to  judgment as a matter of law.  Fed. R. Civ. P.56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark  v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, the non-moving party may not merely rest upon his pleadings, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the Plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Bennett v. Parker, 898 F.2d 1530 (11th Cir. 1990).

STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED BY THE DEFENDANT[1]

Barbara Eddins, a black female, has been employed as a custodian by the Pickens County Board of Education ( "the Board") since 1996. During her employment with the Board, she has been assigned to Carrollton High School/Carrollton Unit School/Carrollton Elementary School. Eddins was a 12-month employee.

During 2006, the Board voted to close Carrollton Unit School. At that time, the Board was subject to a desegregation order issued by the United States District Court for the Northern District of Alabama, in the case of *Lee v. Macon County Board of Education*. The private party plaintiffs in that case objected to the proposed closure. The court held a conference with the parties, at which time a settlement was reached that would allow the school to remain open as an elementary school. An appropriate order was entered on August 3, 2006..

Since 1998, Dr. Leonard Duff has been the Superintendent of Education for the Board. Dr. Melinda Robinson is employed by the Board and was principal of Carrollton Elementary School during the 2006-2007 and 2007-2008 school years. Before becoming principal at Carrollton, she had been assistant principal at Carrollton for approximately seven or eight months. As part of the settlement and subsequent order, Carrollton Elementary School was staffed with individuals as requested by the private party plaintiffs and the Department of

---

[1] This statement of facts has been submitted by the defendants and undisputed by the plaintiff.

3

Justice. Among those individuals requested were Principal Robinson and the plaintiff custodian. Pursuant to the court's order, Robinson and the plaintiff were reassigned to Carrollton Elementary School. The plaintiff agreed to her reassignment to Carrollton Elementary.

When the school reopened in August of 2006, Eddins established her workstation, which was a room in which she had a chair, table, microwave, food, drinks, and reading material. The door to the workstation could be closed and locked from either the inside or the outside. The plaintiff, from time to time, went into the room and closed the door. Cleaning supplies were not kept in the workstation but were kept in a room in the old cafeteria that was no longer used. The plaintiff had not asked permission to establish the workstation.

Eddins' work hours were from 7:30 until 3:30. Robinson noted that students were walking across freshly mopped floors, and changed Plaintiff's work hours to 8:00 to 4:00. There was no job description for the custodian at Carrollton. Robinson created a job description for the plaintiff. Eddins had no problem with the new work schedule.

Dr. Robinson began receiving complaints from teachers that their rooms were not being cleaned. Robinson spoke with Eddins about the complaints and developed a daily cleaning schedule for her to follow. The plaintiff had completed a similar schedule the previous year under the previous principal. When the plaintiff finished cleaning a room, the appropriate teacher initialed the schedule, indicating that the work had been completed. Eddins was not upset that Robinson required her to follow a daily cleaning schedule.

Eddins told Defendant Duff that Robinson was harassing her. Eddins told Duff that

Robinson would tell her that if no one saw her do the work that she had not done the work, that Robinson would come to her and tell her that she saw paper on the ground that needed to be picked up, and that Eddins' work schedule had been changed.

Duff went to Carrollton and met with the plaintiff and Robinson. Robinson denied that she was harassing the plaintiff. Eddins believed that things got worse after the meeting. According to her, Robinson continued to harass her by doing things such as taking her aside and telling her that the walls needed to be washed, that there was tape on the walls that she needed to remove, and that she needed to scrub harder.

On some days, Robinson would summon Eddins and give her the trash to be removed. Robinson's office was the first area to be cleaned each day according to the daily cleaning schedule. On one occasion, Robinson went to the plaintiff and told her that there was trash all over the campus and she needed to clean it up. On another occasion Robinson told the plaintiff to pick up the trash that had spilled around the bin where garbage trucks pick up the trash.

After Robinson became principal at Carrollton, the locks on the doors were changed. The process of changing the locks took several months. Initially, maintenance personnel gave Robinson only two master keys. Robinson kept one key and gave the other to the secretary. The lock on the plaintiff's workstation door was inadvertently changed. Until maintenance personnel provided an additional master key for the plaintiff, Robinson had to unlock the door to the workstation each day. On some days, Robinson was busy and overlooked unlocking the door. The maintenance department was told to give a master key to the plaintiff.

On May 14, 2007, the plaintiff left a vacuum cleaner unattended in the hall. Robinson wrote the plaintiff up for leaving the vacuum cleaner unattended. Plaintiff was not upset over this write-up. Robinson also wrote a memo to Eddins instructing her to move the cleaning supplies from the old lunchroom to the workstation. This upset the plaintiff. She left the school and went to a local hospital for treatment because "something was telling her to kill Defendant Robinson." Eddins stayed away work for a couple of days.

When Eddins returned to work, Robinson told her that she knew that Eddins had been out sick, but there was work that needed to be done, such as removing marks from the floor. Robinson never verbally threatened Eddins. The plaintiff, however, did not return to work until after Robinson transferred to the central office following the 2007-2008 school year.

On May 21, 2007, Eddins wrote a letter to the Board requesting a medical leave of absence from May 21 until July 9. Attached to the request was a letter from Dr. Srilata Anne, stating that Eddins had been under her care since December 2006 for major depressive disorder and that she would need to be off work for six to eight weeks.

In July, 2007, Dr. Anne requested that the plaintiff's leave be extended an additional four to six weeks. In August, 2007, Dr. Anne advised an extension of the leave of absence. In October of 2007, an additional leave request was made, at which time Dr. Joseph Maio stated that he believed the plaintiff should remain off work or be transferred to another school. Each leave request was granted.

On September 29, 2007, Eddins filed a formal grievance with the Board. Pursuant to the Board's grievance policy, Duff appointed Mike Maughan to be his representative at a grievance meeting. A meeting was held with Eddins, Uniserv Director Curtis Travis,

Robinson, and Maughan. At the meeting, Robinson stated that she could work with Eddins.

Shortly before the grievance was filed, the custodian at Aliceville High School resigned. Duff forwarded a copy of the job posting for that job to Eddins. The Aliceville job was a ten-month position. The plaintiff's position at Carrollton was a twelve-month job. A twelve-month employee is paid for twelve months, while a ten-month employee is paid for ten months.

Eddins applied for the Aliceville position. She was interviewed by a team led by Aliceville principal Minnie Washington. In order for the plaintiff to receive the Aliceville position, she would have to accept two months less pay or the additional two months would have to be paid from Aliceville High School funds. Aliceville High School did not have the funds to do that.

Each member of the interview team scored the applicants. The members scored Billy Sterling as the best candidate. Sterling had fifteen years of custodial type experience. Based on the scoring, Washington recommended to Duff that Billy Sterling be hired for the Albertville job. Duff then recommended to the Board that Sterling be hired. If Washington had recommended that the plaintiff be hired, Duff would have recommended her hiring to the Board.

On December 12, 2007, the plaintiff filed a claim of discrimination with the EEOC. On October 27, 2008, the EEOC issued its Notice of Dismissal and Right to Sue.

In her deposition, Plaintiff could not think of any reason for Robinson to have treated her differently because of her gender.

STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS
SUBMITTED BY THE PLAINTIFF [2]

1. During her fourteen-year employment with Defendant Pickens County Board of Education, Plaintiff has not been the subject of any complaints or grievances by her supervisors. [Exhibit A, P. 2]

2. Defendant Duff received complaints from some of Defendant Robinson's subordinates that she had a hard management style. [Exhibit A, P. 2]

4. Defendant Robinson's poor leadership was the subject of a letter from the Carrollton Elementary Trustees to Defendant Duff asking that he correct the matter. [Exhibit A, P. 2, P. 26] [3]

5. Complaints regarding Defendant Robinson's management style played a part in her eventual transfer from her position as Principal of Carrollton Elementary to a position in the central office. [Exhibit A, P. 3]

6. On October 12, 2006, Plaintiff went to Defendant Duff to relate to him that she was becoming very stressed and depressed as a result of Defendant Robinson's conduct toward her. [Exhibit C, P. 12]

7. During her period of employment with Defendant Pickens County Board of Education until the October 12, 2006, meeting with Defendant Duff, Plaintiff never made any complaints or sought help from the superintendent regarding a subordinate/supervisor conflict. [Exhibit C, P. 4]

8. During the course of the school year, Plaintiff could not eat, could not sleep, could not participate in her family's activities due to her work related depression and anxiety. [Exhibit C, P.47]

9. In December, 2006, Plaintiff saw a psychiatrist, Dr. Srilata Anne, for her symptoms and was diagnosed with Major Depressive Disorder, recurrent. [Exhibit C, P. 83]

10. On May 14, 2007, Plaintiff and Defendant Robinson had a confrontation while at school. [Exhibit C. P. 21]

---

[2] The following facts have been offered by the Plaintiff. The scheduling order entered in this matter provides that the first section of the reply brief should contain any disputes with the facts listed by the non-movant. (Dco. 11, p. 9.) Further, unless controverted by the movant, these statements are deemed to be admitted. *Id.* The movant has not addressed these facts. Thus, they are deemed admitted for the purposes of this motion, and are set out herein verbatim.

[3] The non-movant's statement contained no fact number 3.

11. On May 14, 2007, after the confrontation with Defendant Robinson, Plaintiff left school and sought emergency medical treatment at the Pickens County Medical Center for stress-related problems. [Exhibit A. P. 15]

12. As a result of Plaintiff's psychological condition, Plaintiff's physicians recommended that she not return to work under the supervision of Defendant Robinson. [Exhibit C, P. 47]

12.[4] On August 27, 2007, Plaintiff's psychologist, Dr. Joseph Maio, wrote a letter to Defendant Duff describing Plaintiff's work-related severe depression and psychological stress and recommending that Plaintiff either remain off work or transfer to another school where she would not have to deal with Defendant Robinson. [Exhibit C, P. 90]

13. On September 17, 2007, the janitorial position at Aliceville High School became open. [Exhibit A, P. 8]

14. When the janitorial position at Aliceville H.S. became available, Defendant Duff had knowledge of the physicians' recommendation and Plaintiff's desire to transfer to another location. [Exhibit A, P. 10]

15. On September 20, 2007, Plaintiff filed a Grievance Report Form based on Defendant Robinson's conduct and formally requested that she be reassigned to another school. [Exhibit C. P. 28, 91]

16. On September 27, 2007, Defendant Duff sent Plaintiff a letter stating that the janitorial position at Aliceville H.S. was available and that if Plaintiff was interested she would need to submit a letter to his attention. [Exhibit C. P. 30, 98]

17. Defendants did not inform Plaintiff that if she wanted the Aliceville H.S. janitorial position that she could have taken it. [Exhibit C. P. 30]

18. On October 8, 2007, Dr. Anne sent Defendant Duff a letter stating that Plaintiff had been diagnosed with Major Depressive Disorder and Anxiety Disorder related to conflict with Dr. Robinson. [Exhibit C. P. 103]

19. In the October 8, 2007, correspondence to Defendant Duff, Dr. Anne stated that Plaintiff was feeling better and wanted to return to work but felt stressed to return to Defendant Robinson's school. [Exhibit C. P. 103]

20. On October 10, 2007, Dr. Maio sent a letter to Defendant Duff stating that Plaintiff had to take off from work because of tremendous psychological strain and stress caused by the conflict with Defendant Robinson. [Exhibit A, P. 43]

---

[4]The non-movant's facts contained two facts numbered "12."

9

21. In the October 10, 2007, correspondence to Defendant Duff, Dr. Maio stated that Plaintiff could return to work if it could be arranged for Plaintiff to no longer work with Defendant Robinson. [Exhibit A, P. 43]

22. On October 12, 2007, Plaintiff formally requested a transfer by written correspondence to Defendant Duff. [Exhibit C, P. 101]

23. In her October 12, 2007, correspondence, on the advice of her Alabama Education Associate representative, Plaintiff requested that her salary remain the same and not be altered as a result of the transfer. [Exhibit C, P. 101, 48]

24. Plaintiff did not state that she would be unwilling to take the Aliceville H.S. position as a ten-month employee. [Exhibit C, P. 101, 48]

25. Plaintiff is the only twelve-month custodian employed by the Board of Education. [Exhibit D]

26. During the time Plaintiff was on medical leave, she needed to be working in order to support her daughter who was approaching to graduate [sic] from high school.

27. In June, 2008, Dr. Maio wrote a letter to Defendant Duff stating that because Defendant Robinson was no longer the principal at Carrollton Elementary School, that Plaintiff would be able to return to work. [Exhibit B, P. 55]

28. Plaintiff returned to work in June at Carrollton Elementary School after Dr. Robinson was reassigned in June, 2008. [Exhibit C, P. 41]

(Doc. 20, pp. 4-8.)

## ANALYSIS

**Hostile Work Environment**

Count One of the complaint alleges that the defendants "created a hostile work environment." (Doc. 1, p. 6.) The defendants argue that the plaintiff's hostile work environment claim should be dismissed as untimely filed.[5] "A charge under [Title VII] shall

---

[5]The Plaintiff does not respond to this argument in her brief in opposition.

be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)). "A charge alleging a hostile work environment claim, however, will not be time-barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.

It is undisputed that the plaintiff filed her discrimination charge on December 12, 2007. For her claim to have been timely, at least one act that is part of the hostile work environment must have occurred on or after June 15, 2007. Viewing the evidence in the light most favorable to the plaintiff, her last day of work was May 21, 2007. Accordingly, no act that was part of the alleged hostile work environment could have occurred within the required time frame. The plaintiff's hostile work environment claim in Count One is due to be dismissed. Further, for a hostile work environment claim to be actionable, the alleged harassment must be based on the plaintiff's gender. *Baaqee v. Brock & Blevin Const. Co.*, 2000 WL 821469, at *4 (S.D. Ala. 2000), citing *Watkins v. Bowden*, 105 F.3d 1344, 1355 (11th Cir. 1997). In this case, there is no evidence whatsoever that there existed a sexually charged environment.

**Individual Defendants**

The defendants next move for the dismissal of the individual defendants.[6] The plaintiff has named Dr. Robinson and Dr. Duff as defendants in both their official and

---

[6]The Plaintiff does not respond to this argument in her brief in opposition.

individual capacities. Neither Title VII nor the ADA allows claims against individual supervisors. *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007). The official capacity claims against these individuals are also due to be dismissed, as they are essentially claims against the employer. *See Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995) ("Official capacity actions seeking damages are deemed to be against the entity of which the officer is an agent.") Accordingly, the individual defendants, in both their individual and official capacities, are due to be dismissed.

**Disability Claim/Accommodation**

The defendants next attack Eddins' ADA disability discrimination claim set out in Count Two.

> "In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [she] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [her] disability." *Id.* at 1263-64 (citation omitted).
>
> A plaintiff qualifies as disabled under the ADA "if [s]he has 'a physical or mental impairment that substantially limits one or more of the major life activities[.]' " *Id.* at 1264. A person is "substantially limited" in her ability to work if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir.2000).
>
> To avoid summary judgment in a disability discrimination case, the plaintiff must provide evidence sufficient for a jury to find that she was "a qualified individual with a disability," meaning that she was "otherwise qualified" for the job in that she could perform the essential functions of that job with or without reasonable accommodation. *Lucas v. Grainger*, 257 F.3d 1249, 1255-56, 1258 (11th Cir.2001) (citations omitted). "An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability-unless doing so would impose undue hardship on the employer.... An accommodation can qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job." *Id.* (citations omitted).

*Dickey v. Dollar General Corp.*, 351 Fed. Appx. 389, 391 (11th Cir. 2009).

The Eleventh Circuit has made it clear that

"[t]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."

*Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997)). "Once the plaintiff has met her burden of proving that reasonable accommodations exist, the defendant-employer may present evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer." *Terrell*, 132 F.3d at 624.

Albertville job as accommodation: The plaintiff argues that she was discriminated against when the defendants failed to accommodate her disability by giving her the position of custodian at Aliceville High School. The defendants concede, for the purposes of this motion, that the plaintiff has a disability within the meaning of the ADA, that they had notice of her disability at the time the decision to hire Billy Sterling was made, and that the plaintiff could have performed the duties of custodian at Aliceville High School. In response, the defendants dispute that they denied the plaintiff accommodation. The defendants contend that Eddins did not want the Albertville job because it would have paid her less money. In response to this defense, Eddins argues that, although she requested the Albertville job at her present pay, she did not refuse, and would have taken the Albertville job at pay based on ten months of work, if it had been offered to her.

Evidence as to whether it was reasonable to conclude that the plaintiff would have refused the Albertville job, if she had to work less time and thus receive less money, is an October 12, 2007, letter from the plaintiff to Dr. Duff, wherein the plaintiff states:

> Based upon my physician's recommendation, I am requesting a transfer from my current position as Carrollton Elementary Custodian to the Custodial position at Aliceville High School. In addition, I request that my salary remain the same and not be altered as a result of the transfer.

(Doc. 17, p. 101.)[7] The plaintiff also argues that the

> parties' actions indicate that both Plaintiff and Defendants understood that Plaintiff was willing to take the job on a ten-month basis. Why would Defendants interview and consider Plaintiff for the position if she was unwilling to take a pay cut? Why would Plaintiff interview for a position that she was "unwilling to take?" Importantly, why would Plaintiff be unwilling to take a position at a 17% decrease in pay instead of being without a paycheck for an indefinite period of time? In her deposition, Plaintiff stated that she just needed to be working, and that she needed to support her daughter who was approaching to graduate [sic] from high school. Clearly, Plaintiff

---

[7]When asked about her letter to Dr. Duff, the plaintiff testified in her deposition:

Q. All right. And so you wrote Dr. Duff then there in mid-October and told him whatever the letter says, you want to be moved at the same salary; right?

A. Yes, sir.

Q. Which is 12 months?

A. Yes.

Q. Would it be fair to say you wanted to be moved to a 10-month position but be paid as a 12-month employee; an I right?

A. I just wanted to be paid as 12 months, a 12-month employee.

Q. But if it's a 10-month position, you work 10 months but you want to be paid as a 12-month person; right?

A. No, sir, I wanted the 12 month. I understood that it was a 10-month position.

Q. Well, if it's 10 months, then there's only 10 months of work; correct?

A. Right.

Q. So you wanted to go to the 10-month position but be paid for 12 months?

A. I wanted to go 12 months.

(Doc. 17, p. 32.) This evidence, however, was not before the defendants, and so was not considered by them in making the Albertville decision.

14

>requested and would have liked to have been paid as a twelve month employee, but she was not, as Defendants assert, unwilling to transfer to the new position for less money.

(Doc. 20, p. 12.)[8]

It is reasonable to conclude that the plaintiff's request did not amount to a refusal to take the position, if offered. "[A] qualified individual with a disability is not entitled to the accommodation of his choice, but only to a reasonable accommodation." *Santacrose v. CSX Transp., Inc.,* 288 Fed. Appx. 655, 657 (11th Cir. 2008) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir.1997)). Accordingly, if the position were a reasonable accommodation, although not <u>exactly</u> what the plaintiff wanted, the employer would have acted within the law if Eddins had been offered the Albertville position, as long as the factfinder determined that the Albertville job constituted reasonable accommodation.

*Medical leave as accommodation*: There is also the fact question whether the plaintiff's medical leave constituted reasonable accommodation. It is undisputed that the plaintiff's doctors recommended that the plaintiff be transferred <u>or</u> that she remain on medical leave. It is also undisputed that the defendants allowed Eddins to remain on medical leave.

The Eleventh Circuit has held that allowing an employee to use his own sick leave or FMLA leave is a reasonable accommodation. *Santacrose,* 288 Fed. Appx. at 657 ("Though Santacrose wanted to avoid overtime without having to use his company sick leave or FMLA leave, CSX was not obligated to fulfill this specific request, so long as it provided him with

---

[8]The defendants respond that they interviewed Eddins "in the event that Ms. Washington was willing to pay an additional two month's salary out of local school funds." (Doc. 21, p. 5.) No evidence is cited in support of this assertion, and therefore it is not probative.

15

a reasonable accommodation.")  In the instant case, the parties have neither argued nor presented evidence as to the duration that the sick leave was expected to last, the effect it would have on the plaintiff's seniority, pay, and other benefits of employment, or the parties' plans to get the plaintiff working again.  Without such evidence, the court cannot say that allowing the plaintiff to remain on leave was a reasonable accommodation.  *See id.,* at 657 (approving the employer's requirement that the plaintiff use leave time where evidence showed the circumstances to be reasonable).  Because there are so many questions unanswered, whether the defendant is entitled to prevail on this accommodation issue will be left to the trier of fact.

**Retaliation**

Finally, the defendants move to dismiss the retaliation claim.  The Plaintiff states that she was retaliated against when she was not given the Aliceville High School custodian job. A Title VII retaliation claim is analyzed under the *McDonald Douglas* framework. *See, e.g., Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999); *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000). The plaintiff has the initial burden of showing a prima facie case. *Sullivan ,*170 F.3d at 1059. The burden then shifts to the defendants to offer legitimate reasons for the employment decision.  *Id.* If the defendants offer legitimate reasons for the decision, the plaintiff must show that the proffered reasons are pretextual.  *Id.*  To present a prima facie case, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between the two events. *Shannon v. BellSouth*

16

*Telecommunications, Inc.*, 292 F.3d 712, 715 (11th Cir. 2002).

The defendants admit that Eddins engaged in statutorily protected expression, which was the filing of a grievance. They also admit that there was an adverse employment action afterward, which was that the did get the job she applied for. However, the defendants argue that there was no causal connection between the two events. In order to show causal connection, the plaintiff must show that the decision makers were aware of the protected conduct, and that the protected activity and the employment action were not wholly unrelated. *Bass v. Board of County Com'rs, Orange County, FL*, 256 F.3d 1095 (11th Cir. 2001).

It is undisputed that the plaintiff was interviewed by a team led by Aliceville's principal, Minnie Washington. After the interviews, each member of the interview team scored the applicants. The members of the interview team scored Billy Sterling as the best candidate. Sterling had 15 years of custodial type experience. Based on the scoring, Washington recommended to Duff that Sterling be hired for the position. Duff in turn recommended to the Board that Sterling be hired. Duff testified, without dispute, that if Ms. Washington had recommended that Eddins be hired, Duff would have recommended her to the Board. Accordingly, Washington's recommendation, based on the scores of the applicants, determined who was hired. There is no evidence that Washington or the other members of the interview team had any knowledge of the plaintiff's grievance. Accordingly, the plaintiff can show no causal connection between the grievance and the failure to hire her for the Albertville position. The retaliation claim is due to be dismissed.

## CONCLUSION

Based on the foregoing, all claims, except the ADA claim against the Pickens County Board of Education, are due to be dismissed. An appropriate order will be entered.

DONE this 20th day of July, 2010.

*Robert R. Armstrong*
Robert R. Armstrong, Jr.
United States Magistrate Judge